Please rise for the sound session. 3-16-0234 David Bradeau, appellate by Michael Fuller v. Jessica's Corner 230, LLC, and Jessica Sellett, appellees by Megan Catt. Good morning, your honors. May it please the court. I'd just like to start out on my apologies. I'm a little sniffly today, so I do have some Kleenex. Pardon me if I'm... You can make your argument. Yeah, keep them over there. I'll do my best. If I blow my nose, I constantly apologize. Share your wisdom, but not your germs. Yes, ma'am. Your honors, I'll be brief. No pun intended. Your honors, this is a forcible entry and detainer case. In a forcible entry and detainer case, the primary issue is right of possession, and the statute also provides that you can include a claim for rent along with that claim. In this case, what we had is the plaintiff, in this case, I'll use the names to make it a little bit easier. Dave Bradeau rents to Corner 230, or C-230. I may refer to them collectively as C-230. Dave Bradeau rents the premises over by City Hall, known commonly as Corner 230. Now, unfortunately, there's a fire at Corner 230 back in this point, 16 or... In 15, thank you, counsel. In 15, unfortunately, there's a fire. It burns the degree to which the fire caused damages. That's an issue which is, in another case, not the issue here. Nonetheless, it's agreed there is a fire, which causes the place to not be usable and requires cleanup. So after the fire, Mr. Rabideau, Dave, either individually or individually, and by and through anybody who's insured or may have provided to clean the place out, cleans and basically remediates the fire damage. Now, this is a commercial lease, and when this premises was initially leased, Corner 230 leased an empty shell, basically, as the testimony reflects. An empty shell with no power, no water, any of the things that need to be added in there. So the original, the initial lease is, Dave leases Corner 230 an empty building. Now, the fire, as I noted, causes the damages to the property. The damages are remediated at, one way or another, collectively at Dave Rabideau's expense. Notwithstanding that, Corner 230, unilaterally in December, decides not to pay the rent by way of a deferment. I believe there's a letter that's been in the evidence, which Your Honors have probably looked at already, wherein they unilaterally state, based on an alleged side agreement, that we're going to defray the rent based on this unrelated agreement. Litigation follows. And we have this forcible entry and detainer eviction proceeding in front of Judge Heddle. And Judge Heddle, in his decision, rather than focus on this as a commercial lease, renders a decision, makes his determination on whether or not to grant retention of the right of possession by applying basically, as he has enunciated, a reasonableness test. Now, when you read the decision, this reasonableness test rings awfully similar to the, and this is what I argued in the trial court, similar to the test you would apply from Jack Spring v. Little, which is a 1974 Supreme Court case establishing the implied warranty of habitability. However, that applies only to residential structures. And case after case after case subsequent there to have reiterated that. The decision also sounds in the nature of the Tenants' Right to Repair Act, which again is a residential situation. That's not the situation we have here. Here we have a commercial lease. There's the obligation to pay rent is distinct and apart from any obligation to repair, if any. And then there's some dispute as to what and to what extent minor repairs, whose obligation that is. But that's not the issue here. Coroner 230 unilaterally decided to stop paying rent effectively after they caused the fire in the premises. And Judge Heddle, the trial court, my apologies, the trial court has determined, nonetheless, that it's reasonable for them to stay there. However, the trial court did acknowledge that, at minimum at least, they had an obligation to pay rent from January through the date of the decision that was entered by the trial court. But nonetheless, found that it's reasonable for them to have not paid rent or to have defrayed the rent for December, even though that the full rent wasn't paid and it's our position rent, in fact, wasn't paid for October and November. That's all I have. Your position is it wasn't paid for October and November? The rent was not fiscally paid. And I do understand that there's testimony indicating that rent was tendered. There's no evidence or testimony that indicates what the circumstances were relative to, I believe counsel has argued that the tender was rejected, and there really isn't a lot of testimony on that that goes into the reason therefore. But the fact of the matter is rent is not received from Coroner 230 for October, November, December. But the trial court found that there had been a tender and it had been rejected. I understand that. Is that correct? I believe that's a correct summation of the trial court statement. Thank you. May I ask you a question? I said I would be brief. Thank you, Your Honors. Ms. Cantlin. Good morning. May it please the Court. Opposing counsel, I am Attorney Megan Cantlin and I am representing Jessica's Coroner C-230. The issue in this case is very simple. Did C-230 have the right to possess the premises? Judge Heddle ruled that they did have the right to possess the premises and denied Mr. Rabideau's complaint for forcible entry and detainment. This ruling was correct as all rents were tendered for the Monset issue. I first would like to at least point out to address counsel's argument that at the time of the lease, the lease premises was an empty shell. In 2010, Coroner 230 and Mr. Rabideau did enter into a lease for solely the 230 Madison Street property. That is when it was an empty shell. In 2014, the parties entered into a brand new lease and specifically stated on page 1 this was a new lease. In 2014, the premises did have all the electrical, plumbing, heating, everything necessary. They included additional lease premises. They increased the rent and they increased the security deposit, making this a brand new lease. So counsel's argument isn't correct that at the time of the lease it was an empty shell. Additionally, opposing counsel does talk about this reasonable test. In reviewing Judge Heddle's ruling, he doesn't apply a reasonable test as to whether it was reasonable for Coroner 230 to withhold these premises. In my view, he was looking at it, was it reasonable for C-230 to believe that Mr. Rabideau or his agents demolished this premises outside the scope of this fire damage. That's when he looks at was it reasonable, this reasonableness, not was it reasonable for him to withhold the rent. Judge Heddle also in his ruling indicates Mr. Fuller's point that he understands this is a commercial lease and commercial leases are different from residential leases. He does indicate that as well. Now as to why Coroner 230 met its rental obligations, first of all to address October and November's rent. As Justice indicated, the trial court did find that rent was tendered. And I would just like to point out that a tender of rent due if refused is a special to prevent forfeiture that for the nonpayment of rent is actual payment. That comes from North Chicago Street Co. v. LeGrand Co. Opposing counsel in the bench trial did stipulate to the fact that October and November was timely tendered. Therefore, we did not feel the need to go into that more deeply since they stipulated to that fact. I've also cited some other cases that the court does look at whether or not rent was tendered, not what the landlord does following the tender of that rent. Now as to the December's rent, Coroner 230 also met their December obligations because they offset a debt Mr. Rabideau owed by Coroner 230. There is evidence in the record that Coroner 230 and Mr. Rabideau agreed that Coroner 230 could offset this $1,408 debt against future rental payments owed. That is the only evidence in the record. There is no contradictory evidence. And again, Judge Heddle ruled that he found there was an agreement. C-230 could offset their rent by that oral agreement. C-230 did not take this set off until December. They didn't apply it to previous rent owed. So they had that full $1,408 debt. They satisfied the remaining $1,600 by providing a check for $192, and they informed him of this by correspondence. A prison counsel didn't address this really in his argument. He does in his brief that this is extrinsic evidence, and Judge Heddle could not consider this as evidence. However, there is case law that states extrinsic evidence is admissible to show a subsequent oral agreement modifying the terms. Now on to January and subsequent months' rent. C-230 met this obligation because they did set off repairs owed against rent due. Opposing counsel first argues in their brief that Mr. Rabideau had no obligation to make these repairs. However, this is not correct. There is case law that alterations or additions of a substantial or structural nature made necessary by unfortunate or unforeseen future events, not within the contemplation at the time of the parties at which the lease was executed, fall on the less sore. That is Export Corp. v. Cell National Bank that I cite throughout my brief, and this is confirmed essentially by the Quincy Mall case that I also cite throughout my brief, that the tenant has no obligations to make repairs that are going to last a lifetime. C-230, as I laid out extensively in my brief, did make extensive repairs, including redoing all the electrical, the HVAC system, and reinstalling drywall throughout the building. C-230 could offset these repairs, as indicated in the Quincy Mall case, that commercial tenants can't offset rent by repairs made. To do this, they have to meet three requirements. The first is that the tenant inform the landlord of the need to replace the necessary component. Mr. Rabideau was next door. His office is next door to these lease premises. He's well aware he's the one that hired Rainbow, and there's also evidence in the record that C-230 did have conversations with Mr. Rabideau why these demolitions were going on, and he responded he was going to handle their repairs. He was well aware of what was going on in that building. The landlord also failed to replace the necessary component in a timely manner. From the end of October throughout the entire bench trial, Mr. Rabideau made zero repairs. All the repairs were done by C-230. The tenant also informed the landlord of its intent to offset the cost repairs by necessary placements. They did do this by correspondence dated January 14th, and beginning January 1, they were going to start offsetting all these repairs against the rent. Opposing counsel then argues in his brief that these repairs weren't necessary or structural. Kauffman V. Shue Corporation has already held the installation of a heating system as a structural repair, and C-230 did have to replace the HVAC system in the building. They also had to rewire the entire building as all the electrical was essentially removed. Can we stop there for a minute? Absolutely. The things that were removed were not because of the fire, but it was just a complete rip out? Correct. We believe there was some damage done to the fire, and we believe that this is mostly maintained to the kitchen area. All this demo went on both on the C-230 dining room side and the C-228 side. It was also completely torn out. All the electrical, all the HVAC system was torn out of both of those dining rooms, along with plumbing and the toilets and things out of the bathroom, which we believe were not damaged in the fire. And that was Mr. Rabideau's, the person that he hired? Yes, correct. The agents that he hired, that he brought in, essentially demolished the building to its bare walls, according to the record that I provided in the record. Thank you. Like I said, all of these repairs that C-230 did, they were all necessary, they were structural, they were going to last a lifetime, and they were all vital components to operating a restaurant in these leased premises. If there's plenty of evidence in the record, C-230 spent about $10,000 between December and January. That well satisfies the January through March rental obligation. Therefore, I ask this court to uphold the judge's ruling that C-230 did have the rightful possession of the leased premises. Briefly, I did argue that I don't believe C-230 even had a rental obligation because Mr. Rabideau frustrated the purposes of the lease by hiring the agents to go in there and demolish, essentially, the building down to its bare walls, resulting in C-230 not being able to operate. And also that Mr. Rabideau was receiving insurance payments, and according to Dick's Mutual Insurance Company v. Labrosi, that is a case that basically sends a tenant as a third-party beneficiary of insurance proceeds of the landlord. Any other questions? Thank you. Thank you, Your Honors. Just addressing a couple of points. Judge Heddle, I believe, ruled in various motions that the insurance issue was not going to be considered, and I do not believe he considered that in his decision, to my recall. With respect to frustration of purpose, Mr. Rabideau didn't burn this place up. C-230 or its agents caused the fire. Now, we're getting into, or counsel's getting into in her brief and in her argument, items about damages that are still pending in 15L-179 in the circuit court. Now, some of those issues were delved into in the eviction case because there was a motion to consolidate, and the judge consolidated the cases, at least for purposes of the eviction trial, to that extent only. These issues are still pending. What was reasonably repaired? What was needed to be repaired? That's an issue that will be decided at a later date by Judge Heddle in that case. And there's evidence in this case, in the consolidated cases, that despite the characterization that Mr. Rabideau sat by and watched his people do this, there's testimony from C-230 that they likewise, and counsel even mentioned that our agent or Mr. Rabideau's agent spoke with C-230 or its representatives. So we've got a situation where there's a fire, the place is damaged, and the landlord cleans up, because the landlord has the insurance, and since the insurance was brought up, it might go a little further, cleans the premises out at his or his insurer's expense, and then the tenant decides, I'm not going to pay the rent. That's just not right. I'm not going to pay rent. I'm going to sit and watch your people clean the damage done by my people, and I'm still not going to pay rent. So for that and the reasons I stated in the brief, I think Judge Heddle's or Circuit Court's ruling should be read first. Thank you. Thank you both for your arguments. I'm sorry? I'm just thanking you and your colleagues for your arguments. Oh, thank you, Your Honor. Thank you.